```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF TENNESSEE
         NASHVILLE DIVISION
```

MILTON HARRIS,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )      No. 3:04-0762
                                  )
THE METROPOLITAN GOVERNMENT OF    )      JUDGE ECHOLS
NASHVILLE AND DAVIDSON COUNTY,    )
et al.,                           )
                                  )
        Defendants.               )

## MEMORANDUM

Presently pending before the Court are the Motion for Partial Dismissal (Docket Entry No. 7) and the Motion for Partial Dismissal of Second Amended and Supplemental Complaint (Docket Entry No. 37) filed by Defendants Dr. Elizabeth Keel, Michael Tribue, Dr. Frank Cirrincione and Metropolitan Government, as well as the Motion for Dismissal (Docket Entry No. 11) and Motion for Partial Dismissal of Second Amended and Supplemental Complaint (Docket Entry No. 39) filed by Defendant Scott Brunette. The Court permits Defendant Brunette to join in the Motions and supporting Memoranda filed by the other Defendants. Plaintiff responded in opposition to the Motions.

### I. PROCEDURAL HISTORY

On August 26, 2004, Plaintiff Milton Harris initiated this lawsuit against his employer, the Metropolitan Government of Nashville and Davidson County; Michael Tribue, Executive Principal of McGavock Comprehensive High School ("McGavock"); Dr. Frank

1

Cirrincione, Athletic Director for McGavock; Scott Brunette, Athletic Director for the Metropolitan Nashville School System; and Dr. Elizabeth Keel, Director of the Human Resources Department of the Metropolitan Nashville School System. Defendants Tribue, Cirrincione, Brunette, and Keel were sued in their individual capacities. On October 6, 2004, Plaintiff filed an Amended Complaint, and on February 1, 2005, Plaintiff filed a Second Amended and Supplemental Complaint.

The Second Amended Complaint includes the following claims: race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the Tennessee Human Rights Act ("THRA"); race discrimination and retaliation under 42 U.S.C. § 1981; age discrimination under the Age Discrimination in Employment Act, 42 U.S.C. § 6101, et seq. ("ADEA") and the THRA; violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; a violation of Equal Protection under 42 U.S.C. § 1983; and state-law claims for breach of contract, negligent and intentional infliction of mental distress, and malicious harassment. Plaintiff seeks declaratory and injunctive relief, back pay and benefits, reinstatement or front pay and benefits, compensatory and punitive damages, pre-judgment interest, attorney's fees and costs.

In response to the Amended Complaint and the Second Amended and Supplemental Complaint, Defendants moved for partial dismissal on a number of Plaintiff's claims. Plaintiff contended that the Defendants supplied numerous documents with their Motions,

2

effectively converting them to Motions for Summary Judgment, and that Plaintiff required a period of discovery to obtain information necessary to respond to the Motions.

The Magistrate Judge denied a motion to stay discovery and granted Plaintiff leave to serve, within a narrow time period set by the Court, limited written discovery on the Defendants tailored to the issues raised in the Motions and only as to that information Plaintiff believed necessary to respond to the Motions. (Docket Entry No. 12, October 27, 2004 Order.) This Court entered an Order and Memorandum (Docket Entry Nos. 21 & 22) denying Defendants' Motion for Review seeking reversal of the Magistrate Judge's denial of the stay. Defendants appealed the denial to the Sixth Circuit, but that court dismissed the appeal for lack of jurisdiction. In the interim, the Court entered an Order and Memorandum (Docket Entry Nos. 34 & 35) denying Defendants' Motion for Review of the Magistrate Judge's third discovery order. The Defendants' Motions to Dismiss are now ripe for ruling.

## II. **FACTS**

Because Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court draws the facts from the Second Amended and Supplemental Complaint and construes them in the light most favorable to the Plaintiff.

Plaintiff is a 57-year old African American Health/Wellness teacher at McGavock Comprehensive High School in Nashville, Tennessee, who began his teaching career in 1973. In the fifteen years prior to January 15, 2004, Plaintiff served as the McGavock

3

head boys varsity basketball coach and received a coaching stipend in the amount of twelve percent (12%) of his gross annual salary. Plaintiff was honored as "Coach of the Year" after the 2002-2003 basketball season.

Plaintiff began teaching the 2003 fall semester at McGavock and received his percentage supplement for coaching as a part of his bi-weekly paycheck. The school system pays coaches their stipends beginning with the first pay period of the fall semester, regardless of when the particular athletic season begins.

On October 29, 2003, Plaintiff suffered a heart attack and was hospitalized for two weeks. He used his accumulated sick leave to convalesce with the knowledge and approval of the school system. Plaintiff was off work less than twelve (12) weeks.

On December 17, 2003, Defendant Dr. Cirrincoine sent a letter to Defendant Brunette instructing him to drop Plaintiff as head boys varsity basketball coach and to appoint the assistant coach, Marlon Simms, who is an African American male in his thirties with less coaching experience, to the head coach position. Defendant Burnette approved removing the 12% stipend from Plaintiff and increasing the stipend given to Simms. Plaintiff did not know about these actions at the time they occurred. Although Plaintiff was technically on sick leave, he attended the Christmas basketball tournament at Overton High School and sat with the McGavock team during two games to give moral support.

Plaintiff returned to work on January 10, 2004. On January 16, 2004, he noticed that his paycheck was substantially less than

the week before. He called the payroll department and learned that he was no longer the McGavock head boys' varsity basketball coach and therefore, he was not eligible to receive a coaching stipend. The same afternoon, Plaintiff contacted Dr. Cirrincione, who informed Plaintiff that he terminated Plaintiff's coaching position and gave his title and stipend to Simms because he thought Plaintiff was too ill to continue coaching.

Plaintiff then called Defendant Brunette, who advised Plaintiff that the only person who could restore Plaintiff to the coaching position was McGavock's Executive Principal, Defendant Tribue. Plaintiff wrote a letter to Defendant Tribue dated January 21, 2004, to complain about losing his position as head coach and the loss of his stipend. Plaintiff then visited Defendant Tribue personally to inquire about his coaching position. Defendant Tribue told Plaintiff there had been a mistake and he would straighten it out.

Plaintiff received a letter from Defendant Tribue dated January 22, 2004, in which he reinstated Plaintiff to his coaching position, but explained that he could not reinstate the coaching stipend because Plaintiff had not attended at least two-thirds of the basketball games played by the team, pursuant to Metro policy. Defendant Tribue instructed that Plaintiff should be reinstated as head boys' varsity basketball coach effective January 17, 2004.

On January 27, 2004, Plaintiff called Defendant Dr. Keel to ask about his letter to Defendant Tribue. She reported she had not received a copy and requested that Plaintiff fax her a copy, which

5

Plaintiff did the same day. On January 29, 2004, Plaintiff called Dr. Keel again to inquire about Defendant Tribue's letter and his coaching stipend. She stated that Plaintiff was not entitled to any stipend if he was not coaching.[2] Plaintiff alleges that two Caucasian basketball coaches at other schools, William Deering and Winston Gamble, did not lose their basketball coaching stipends when they missed work due to accident or illness.

Plaintiff alleges that, although his coaching position and title were allegedly restored effective January 12, 2004, all Metro school correspondence and memoranda were sent to Marlon Simms, rather than Plaintiff. He also alleges that, on January 29, 2004, Defendant Cirrincoine called Simms, rather than Plaintiff, to complain about the manner in which some basketball team members wore their uniforms. He also alleges that on January 30, 2004, a "snow day," Defendant Tribue called Simms, rather than Plaintiff, to tell him that a game would be played that night. At the game, Simms was publicly introduced as head basketball coach and Plaintiff as assistant coach.

Plaintiff also alleges that on February 8, 2004, Defendant Tribue demanded that he sign an acknowledgment of a new policy in effect for the 2003-2004 year that coaches had to attend at least two-thirds (2/3) of the games played in order to receive their stipends. Plaintiff alleges that he later learned no other coach

---

[2]The school system stopped paying Plaintiff's coaching stipend in January 2004 to recoup the stipend that was allegedly paid improperly during fall semester of 2003 when Plaintiff was off work due to illness and not coaching.

6

in the school system was required to sign the form. Plaintiff alleges he attended 18 of 32 basketball games during the 2003-2004 season. Further, Plaintiff was not notified to attend the District Basketball Tournament Meeting; rather, Simms advised him of the results of the meeting. Simms also took charge of distributing District Tournament Game passes, which should have been done by Plaintiff as head coach. At the February 24, 2004 tournament game, Plaintiff and Simms were publicly introduced as joint head coaches.

On February 25, 2004, Channel 2 interviewed Simms about Coach Terry Watson and the McGavock team, but Plaintiff claims he had worked with Coach Watson for six (6) years, while Simms had worked with him for three (3) months. Plaintiff further alleges that, on February 26, 2004, Simms called a boys' varsity basketball team meeting without notifying Plaintiff, and on March 4, 2004, Defendant Tribue allowed a teacher to announce over the school intercom what a great job Simms had done with the boys' basketball team without any mention of Plaintiff, who was supposed to be head coach.

On May 21, 2004, Plaintiff learned at a faculty meeting from a McGavock guidance counselor that she had heard from Defendant Tribue that Plaintiff would not be allowed to coach in the next year, whether or not he retired. Defendant Tribue cancelled the McGavock Summer Basketball League, a duty Plaintiff had performed for the previous nine (9) years, but advised Simms of the cancellation, not Plaintiff. Plaintiff alleges Defendant Tribue told other coaches and teachers that Plaintiff was retiring at the

7

end of the 2003-2004 school year. On August 17, 2004, Plaintiff learned that, for the 2004-2005 school year, all McGavock coaches were required to sign "the 2/3 attendance" policy, but none of the coaches at other Metro schools were required to sign the policy. In October 2004, after filing his EEOC charge, Plaintiff learned from Defendant Tribue that he was not going to be hired as a boys' basketball coach for the 2004-2005 school year.

The individual Defendants now move to dismiss all claims brought against them in their individual capacities, and Defendant Metropolitan Government seeks dismissal of the federal claims brought against it under 42 U.S.C. §§ 1981 & 1983 and the FMLA, as well as the state-law claim for malicious harassment brought under Tenn. Code Ann. § 4-21-701(b). In response to the Motions, Plaintiff concedes that the Second Amended and Supplemental Complaint does not assert any claims against the individual Defendants under Title VII or the ADEA. Plaintiff emphasizes that his Title VII and ADEA claims are brought against Defendant Metropolitan Government only. Moreover, Plaintiff agrees to dismiss voluntarily without prejudice his state-law claims of intentional and negligent infliction of emotional distress and malicious harassment.

Accordingly, the Court will DISMISS WITHOUT PREJUDICE Plaintiff's state-law claims of intentional and negligent infliction of emotional distress and malicious harassment. The Court will address the other claims in light of the pending Motions to Dismiss under Rule 12(b)(6).

### III. STANDARD OF REVIEW

In evaluating Plaintiff's Second Amended and Supplemental Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). The Court should not dismiss the complaint unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of his claims that would entitle him to relief. See id. at 12. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

As a general rule, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56. Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997). Any exhibit that is attached to the complaint is considered a part of the pleadings, however, and a defendant may attach documents to a motion to dismiss if the documents are referred to in the complaint or if they are central to the plaintiff's claim. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Weiner, 108 F.3d at 89. "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Jackson, 194 F.3d at 745. A court may also consider factual allegations made in the EEOC

9

filings that are attached to the complaint.  <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001).

## IV. ANALYSIS

**A. 42 U.S.C. § 1981 disparate treatment claim (All Defendants)**

Plaintiff alleges the Defendants have deprived him:

> of the terms and conditions of his employment as head basketball coach by deducting his coaching stipend from his salary in 2003 and 2004, during his absence from work due to illness, when they did not impose this sanction on other similarly situated athletic coaches who were not African Americans.

(Docket Entry No. 24, Second Amended and Supplemental Complaint at 13.)

*1. Dr. Keel*

Specifically with regard to Dr. Keel, Plaintiff alleges that she is "responsible for drafting and implementing personnel and payroll policies affecting athletic coaches employed by the Metro School System, including Plaintiff[,]" and that she "was a Metro official acting under color of law." (<u>Id.</u> at 5.) Plaintiff further alleges that he called Dr. Keel on January 27, 2004, to ask about his letter to Defendant Tribue. She asked him to fax her a copy. The letter, in which Plaintiff sought the reinstatement of his coaching stipend, is attached as Exhibit E to the Second Amended and Supplemental Complaint. It is addressed only to Defendant Tribue, and Defendants Dr. Keel and Burnette are "copied" on the letter. Plaintiff alleges he called Dr. Keel again on January 29, 2004, and she informed him he could not be paid a coaching stipend if he was not coaching.

10

Section 1981 can be violated only by intentional or purposeful discrimination. General Bldg. Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). Plaintiff does not allege Dr. Keel's race. He does not allege that Dr. Keel knew Plaintiff's race and that she treated him differently because of his race. There are no factual allegations in the Second Amended and Supplemental Complaint from which one can discern that Dr. Keel intentionally discriminated against Plaintiff because of his race. Plaintiff alleges only that Dr. Keel answered two telephone calls from him, that she requested he fax her a copy of his letter to Defendant Tribue, and that she told him he could not receive a coaching stipend if he was not coaching. While Plaintiff alleges that two Causasian coaches were not required to give up their coaching stipends when they were injured or ill, Plaintiff does not allege that these events occurred near in time to the event of which he complains, or that Dr. Keel had any involvement or made any decisions in either of the other situations. Plaintiff's allegations, without more, are insufficient to state a claim against Dr. Keel for intentional race discrimination under § 1981. Moreover, to the extent Plaintiff named Dr. Keel as a Defendant because she is Director of the Human Resources Department of the Metropolitan Nashville School System, she cannot be held liable individually on a respondeat superior theory under § 1981. See id. at 392-394.

2. *Defendant Tribue*

Plaintiff alleges that Defendant Tribue is African American like Plaintiff, but Plaintiff does not allege why he believes

11

Defendant Tribue treated him differently based on race. Plaintiff does allege that Defendant Tribue met with him and promised to "straighten out" the situation with Plaintiff's coaching position. Defendant Tribue wrote a letter directing Plaintiff's reinstatement to the head coaching position, but explained that the coaching stipend could not be reinstated because Plaintiff had not attended at least two-thirds of the basketball games played by the team, pursuant to Metro policy. While Plaintiff alleges that two Causasian coaches were not similarly required to give up their coaching stipends when they were injured or ill, Plaintiff does not allege that those events occurred at McGavock under Defendant Tribue's leadership or that Tribue had any involvement in making decisions as to either coach. Thus, Plaintiff fails to allege facts showing that Defendant Tribue intentionally discriminated against him based on race. See General Bldg. Contractors Assn., Inc., 458 U.S. at 391.

    *3. Dr. Cirrincione*

Plaintiff alleges that his supervisor, Dr. Cirrincione, wrote a letter on December 17, 2003, requesting that Plaintiff be dropped as head coach. In the same letter, Dr. Cirrincione asked that Marlon Simms, also an African American, be appointed as head coach. Plaintiff does not allege Dr. Cirrincione's race. When Plaintiff confronted Dr. Cirrincione in January 2004 and asked why he drafted the letter, Dr. Cirrincione replied he thought at the time that Plaintiff was too ill to continue coaching. The only other allegation Plaintiff makes against Dr. Cirrincione is that he

12

called Simms, rather than Plaintiff, to make a complaint about the basketball team. These allegations, without more, do not state a claim for intentional discrimination based on race under § 1981. See General Bldg. Contractors Assn., Inc., 458 U.S. at 391.

   *4. Defendant Burnette*

Plaintiff does not allege Defendant Burnette's race. Plaintiff alleges that Defendant Burnette was employed "as Athletic Director for the entire Metro School System responsible for drafting and implementing personnel and payroll policies for athletic coaches employed throughout the Metro School System, including Plaintiff." (Docket Entry No. 24 at 4-5.) He further alleges that Defendant Burnette accepted Plaintiff's telephone call and advised Plaintiff that the only person who could reinstate Plaintiff's coaching position was Defendant Tribue. Plaintiff does not make any allegations that Defendant Burnette treated two Caucasian coaches differently from Plaintiff or that he was even involved in the decision-making concerning those two coaches. The allegations do not state a claim for intentional discrimination based on race under § 1981. Plaintiff also cannot rely on a respondeat superior theory to preserve his § 1981 claim against Defendant Burnette. See General Bldg. Contractors Assn., Inc., 458 U.S. at 391.

For these reasons, the individual Defendants, Dr. Keel, Tribue, Dr. Cirrincione, and Burnette, are entitled to dismissal of the § 1981 claims brought against them, and the Court need not

13

reach the issue of whether these individual Defendants are entitled to qualified immunity.

    *5. Metropolitan Government*

Plaintiff may not hold the Metropolitan Government liable under § 1981 on a theory of respondeat superior. Rather, "to prevail on his claim for damages against the school district, [Plaintiff] must show that the violation of his 'right to make contracts' by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." Jett v. Dallas Indep. School Dist., 491 U.S. 701, 735-736 (1989). See also Monell v. Dept. of Social Servs., 436 U.S. 658 (1978). Plaintiff has not made any allegations that he suffered damages as a direct result of a policy or procedure of the supervising officials of Metropolitan Government's school system permitting discrimination on the basis of race or age. Absent such allegations, Plaintiff fails to state a claim for racial discrimination against Metropolitan Government under § 1981.

Accordingly, Plaintiff's § 1981 claim for disparate treatment will be DISMISSED as to all Defendants.

**B. 42 U.S.C. § 1981 Claim of Retaliation (All Defendants)**

For the first time in the Second Amended and Supplemental Complaint, Plaintiff claims under § 1981 that Defendants' decision to deny him the McGavock head basketball coach position for the 2004-2005 season was made in retaliation for his assertion of his civil rights before the Equal Employment Opportunity Commission ("EEOC") and in this lawsuit. Plaintiff filed administrative

14

charges with the EEOC on February 10, 2004, and he filed his original Complaint on August 26, 2004. Plaintiff alleges that Defendant Tribue told him in October 2004 that he was not going to be hired as boys' basketball coach.

Defendants recognize that Plaintiff added this new claim (Docket Entry No. 37 at 1; Docket Entry No. 39), but Defendants have not made any legal argument in support of a motion to dismiss the claim. Accordingly, Plaintiff may proceed to litigate the retaliation claim brought under § 1981.

**C. Equal Protection Claim**

Under 42 U.S.C. § 1983, Plaintiff alleges the individual Defendants, acting under color of state law, "invidiously discriminated against him on the basis of his race by denying him the same employment stipend enjoyed by two similarly situated white coaches whose coaching duties were interrupted by illness or injury." (Docket Entry No. 24 at 16.) Plaintiff names two Caucasian coaches who reportedly did not suffer a cut in their coaching stipends when they were forced by illness or accident to miss games. Furthermore, Plaintiff alleges that the individual Defendants, "acting singly and in concert" deprived him of equal protection:

> by arbitrarily and illegally deducting his coaching stipend from his salary when such action was either not authorized by any rule or regulation or policy in effect at the time or was not enforced against certain white coaches because of their race.

15

(Id.) He alleges that the actions of the individual Defendants constituted official unwritten policy by Defendant Metropolitan Government, making all Defendants liable under § 1983.

To prove an equal protection violation under § 1983, Plaintiff must prove the same elements that are required to establish a disparate treatment claim under Title VII using the McDonnell Douglas/Burdine burden-shifting framework. Singfield v. Akron Metropolitan Housing Auth., 389 F.3d 555, 566-567 (6th Cir. 2004). The elements of the *prima facie* case are: (1) Plaintiff was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position he sought; and (4) he was replaced by another outside the protected class or he was treated differently than similarly situated, non-protected employees. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 728 (6th Cir. 2004).

Plaintiff fails to state a claim under the Equal Protection Clause because he did not allege sufficient facts to show that the two Caucasian coaches were similar to him in all relevant respects. See Smith v. Leggitt Wire Co., 220 F.3d 752, 762 (6th Cir. 2000). To be similarly situated, the individuals with whom Plaintiff seeks to compare himself "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at 762. Plaintiff does not allege that any of the individual Defendants acted as a decision-maker or supervisor

16

with regard to the two Caucasian comparators. He also does not allege that the coaches were subject to the same standards or that their circumstances were indistinguishable from his own. Consequently, Plaintiff fails to state an Equal Protection claim against any of the Defendants, and this claim will be DISMISSED WITH PREJUDICE.

**D. FMLA Claim**

Plaintiff alleges that the deduction of his coaching stipend from his salary upon his return to work was a loss of a benefit of employment protected by the FMLA in violation of 29 U.S.C. § 2614(a)(2). Plaintiff further alleges Defendants' position that the deduction was made pursuant to school board policy is incorrect, as the policy did not take effect until January 23, 2004. (Docket Entry No. 24, Ex. L.)

Section 2614(a)(2) provides: "The taking of leave under section 2612 of this title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." The FMLA defines "employment benefits" as:

> [A]ll benefits provided or made available to employees by an employer, including group life insurance, health insurance, disability insurance, sick leave, annual leave, educational benefits, and pensions, regardless of whether such benefits are provided by a practice or written policy of an employer or through an "employee benefit plan," as defined in section 1002(3) of this title.

29 U.S.C. § 2611(5).

In Groce v. Metropolitan Gov't., No. 3:01-1436 (M.D. Tenn. 2002), Judge Trauger ruled in a similar case on motions for summary judgment that a coaching stipend is not an "employment benefit" as

17

that term is defined in the FMLA.  She reasoned that "plaintiff's coaching supplement was available to him only when he was named coach for the year.  It was a salary increase available only to those teachers who also served as coaches for school teams." (Docket Entry No. 7, Ex. C, Groce Memorandum at 10.)  Defendants rely on Judge Trauger's ruling to seek dismissal of the FMLA claim in this case.

The Court agrees with Judge Trauger that a coaching stipend does not constitute an "employment benefit" as defined by the FMLA, and that a coaching stipend is a salary increase paid to teachers who coach.  The FMLA provides that an employee returning to work following FMLA leave is entitled "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1)(B). Plaintiff alleges that, upon his return to work in January 2004 after taking FMLA leave, he was "entitled to return to his position as head boys' basketball coach . . . with all the same terms and benefits he enjoyed at the time his leave began."  (Docket Entry No. 24 at 15.)  Plaintiff also alleges that the deduction of his "coaching stipend from his salary upon his return to work" violated the FMLA.  Thus, the Court concludes that Plaintiff sufficiently stated an FMLA claim for a loss of pay.  Moreover, Plaintiff alleges the applicability of a school district policy effective in January 2004 that was not at issue in the older Groce case. Accordingly, Defendants' motions to dismiss the FMLA claim will be DENIED.

## V. CONCLUSION

For the reasons stated, the Motion for Partial Dismissal (Docket Entry No. 7) and the Motion for Partial Dismissal of Second Amended and Supplemental Complaint (Docket Entry No. 37) filed by Defendants Dr. Elizabeth Keel, Michael Tribue, Dr. Frank Cirrincione and Metropolitan Government, as well as the Motion for Dismissal (Docket Entry No. 11) and Motion for Partial Dismissal of Second Amended and Supplemental Complaint (Docket Entry No. 39) filed by Defendant Scott Brunette will be GRANTED IN PART AND DENIED IN PART.

Plaintiff's state-law claims of intentional and negligent infliction of emotional distress brought against all individual Defendants will be DISMISSED WITH PREJUDICE in light of Plaintiff's agreement to dismiss these claims voluntarily.

Plaintiff's state-law claim of malicious harassment brought against all Defendants will be DISMISSED WITH PREJUDICE in light of Plaintiff's agreement to dismiss the claim voluntarily.

The Second Amended and Supplemental Complaint does not contain any claims of individual liability against Defendants Dr. Keel, Tribue, Dr. Cirrincione and Brunette under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq*. Thus, to the extent the Motion for Partial Dismissal (Docket Entry No. 7) and the Motion for Dismissal (Docket Entry No. 11) seek dismissal of such claims included in the

19

original and Amended Complaints, the Motions will be DENIED AS MOOT.

Plaintiff's claims for intentional race discrimination under 42 U.S.C. § 1981 and under the Equal Protection clause pursuant to 42 U.S.C. § 1983 will be DISMISSED WITH PREJUDICE for failure to state a claim. Defendants' motions to dismiss Plaintiff's claim under the FMLA will be DENIED.

The claims remaining for adjudication against Defendant Metropolitan Government are: race and age discrimination claims under Title VII, the ADEA, and the Tennessee Human Rights Act; the FMLA claim, a retaliation claim under 42 U.S.C. § 1981, and a state-law breach of contract claim. The claim remaining for adjudication against the individual Defendants is the retaliation claim under 42 U.S.C. § 1981.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE