UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MILTON HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:04-0762 |
| | ) JUDGE ECHOLS |
| THE METROPOLITAN GOVERNMENT OF | ) |
| NASHVILLE AND DAVIDSON COUNTY, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Presently pending before the Court is Defendants' Motion to Dismiss Retaliation Claim Under 42 U.S.C. § 1981 (Docket Entry No. 59), to which Plaintiff Milton Harris responded in opposition.

### I. PROCEDURAL HISTORY

On August 26, 2004, Plaintiff Milton Harris initiated this lawsuit against his employer, the Metropolitan Government of Nashville and Davidson County; Michael Tribue, Executive Principal of McGavock Comprehensive High School ("McGavock"); Dr. Frank Cirrincione, Athletic Director for McGavock; Scott Brunette, Athletic Director for the Metropolitan Nashville School System; and Dr. Elizabeth Keel, of the Human Resources Department of the Metropolitan Nashville School System. Defendants Tribue, Cirrincione, Brunette, and Keel were sued in their individual capacities. On October 6, 2004, Plaintiff filed an Amended Complaint, and on February 1, 2005, Plaintiff filed a Second Amended and Supplemental Complaint.

1

In an Order and Memorandum entered on August 18, 2005, the Court dismissed under Federal Rule of Civil Procedure 12(b)(6) claims against all Defendants for intentional race discrimination under 42 U.S.C. § 1981 and under the Equal Protection clause pursuant to 42 U.S.C. § 1983. The Court also dismissed, on Plaintiff's agreement to dismiss voluntarily, state-law claims of intentional and negligent infliction of emotional distress and malicious harassment brought against all Defendants. The Court also clarified that the Second Amended and Supplemental Complaint did not include any claims of individual liability under Title VII against Defendants Dr. Keel, Dr. Cirrincione, Tribue, and Brunette.

The Court further recognized that Plaintiff added a retaliation claim against all Defendants in his Second Amended and Supplemental Complaint, but Defendants did not make any argument for dismissal of the claim, and the Court left it intact. All Defendants now move to dismiss the retaliation claim brought under 42 U.S.C. § 1981.

## II. FACTS

Plaintiff is a 57-year old African American Health/Wellness teacher at McGavock Comprehensive High School in Nashville, Tennessee, who began his teaching career in 1973. In the fifteen years prior to January 15, 2004, Plaintiff served as the McGavock head boys varsity basketball coach and received a coaching stipend in the amount of twelve percent (12%) of his gross annual salary. Plaintiff was honored as "Coach of the Year" after the 2002-2003 basketball season.

Plaintiff began teaching the 2003 fall semester at McGavock and received his percentage supplement for coaching as a part of his bi-weekly paycheck. The school system pays coaches their stipends beginning with the first pay period of the fall semester, regardless of when the particular athletic season begins.

In late October 2003, Plaintiff suffered a heart attack and was hospitalized. He was off work less than twelve (12) weeks.

On December 17, 2003, Defendant Dr. Cirrincoine sent a letter to Defendant Brunette instructing him to drop Plaintiff as head boys varsity basketball coach and to appoint the assistant coach, Marlon Simms, who is an African American male in his thirties with less coaching experience, to the head coach position. Defendant Burnette approved removing the 12% stipend from Plaintiff and increasing the stipend given to Simms. Plaintiff did not know about these actions at the time they occurred. Although Plaintiff was technically on leave, he attended the Christmas basketball tournament at Overton High School and sat with the McGavock team during two games.

Plaintiff returned to work in January 2004. On January 16, 2004, he noticed his paycheck was substantially less than the week before. He called the payroll department and learned that he was no longer the head coach and was not eligible to receive a coaching stipend. The same afternoon, Plaintiff contacted Dr. Cirrincione, who informed Plaintiff that he terminated Plaintiff's coaching position and gave his title and stipend to Simms because he thought Plaintiff was too ill to continue coaching.

Plaintiff contacted Defendants Brunette and Tribue in an effort to recover his position and stipend as head coach. Defendant Tribue reinstated Plaintiff to the position effective January 17, 2004, but explained to Plaintiff he could not reinstate the coaching stipend because Plaintiff had not attended at least two-thirds of the basketball games played by the team, pursuant to Metro policy. Dr. Keel confirmed to Plaintiff that he could not receive a stipend if he was not coaching. Plaintiff alleges that two Caucasian basketball coaches at other schools did not lose their basketball coaching stipends when they missed work due to accident or illness.

Plaintiff alleges that, even though his coaching position and title were allegedly restored, he was not treated as if he were the head coach for the remainder of 2004, and he was required to sign and acknowledgment a new policy that no other coach in the school system was required to sign.

Plaintiff filed administrative charges with the Equal Employment Opportunity Commission on February 10, 2004. On May 21, 2004, Plaintiff received information that Defendant Tribue had stated Plaintiff would not be allowed to coach in the next year, whether or not he retired. Tribue cancelled the McGavock Summer Basketball League, a duty Plaintiff had performed for the previous nine (9) years, but did not advise Plaintiff of the cancellation. Plaintiff alleges Defendant Tribue told other coaches and teachers that Plaintiff was retiring at the end of the 2003-2004 school year.

4

On August 26, 2004, Plaintiff filed the original Complaint in this lawsuit. In October 2004 Defendant Tribue told Plaintiff that he was not going to be hired as a boys' basketball coach for the 2004-2005 school year.

### III. STANDARD OF REVIEW

In evaluating the retaliation claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). The Court should not dismiss the claim unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support that would entitle him to relief. See id. at 12. A claim must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

### IV. ANALYSIS

Defendants contend Plaintiff failed to plead "race-based retaliation" against Dr. Keel, Dr. Cirrincione, and Scott Brunette because Plaintiff did not allege that these Defendants had any role in deciding whether Plaintiff would serve as McGavock head boys' basketball coach in 2004-2005, nor did Plaintiff allege these Defendants acted with intentional or purposeful race discrimination against Plaintiff, relying on General Bldg. Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). Further, Defendants assert that Plaintiff failed to allege any facts tending to show why he believes Defendant Tribue, who is also African

5

American, retaliated against Plaintiff based on race.  Concerning Defendant Metropolitan Government, Defendants suggest Plaintiff failed to allege facts indicating he suffered damages as a direct result of a policy or procedure that permits school officials to retaliate based on race.  Finally, Defendants contend that, at the end of the 2003-2004 basketball season, Plaintiff did not have a "contract right" or any legally recognized "reasonable expectation" that he would again be assigned to the head coach position in 2004-2005.  Thus, Defendants could not have retaliated against him as a matter of law.

Defendants' arguments misapprehend the nature of Plaintiff's claim and the law on retaliation.  The elements of a *prima facie* case of retaliation and the allocation of the burden of proof are the same for employment claims stemming from Title VII and § 1981. Johnson v. University of Cincinnati, 215 F.3d 561, 573 n.5 (6th Cir. 2000); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004).  To demonstrate a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in protected civil rights activity, (2) the activity was known to the defendant, (3) he was subjected to tangible employment action, and (4) there is a causal link between the protected activity and the adverse employment action.  See Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001).  The evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action.  Id.  If Plaintiff establishes a *prima facie* case, then the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for deciding that Plaintiff would not be

6

head coach in 2004-2005.  Id.  If Defendants carry that burden, then Plaintiff must demonstrate the proffered reason was not the true reason for the employment action--i.e., that the reason was a mere pretext for retaliation.  Id.  The gravamen of the cause of action is not race-based discrimination, but unlawful retaliation against the Plaintiff for lawfully pursuing his civil rights.

Plaintiff was not required to include in his Second Amended and Supplemental Complaint specific facts establishing the *prima facie* case of retaliation, so long as he placed the Defendants on notice of the basis of his retaliation claim.  See <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511-512 (2002).  Plaintiff alleged he filed administrative charges with the Equal Employment Opportunity Commission on February 10, 2004.  On May 21, 2004, he received information that Defendant Tribue did not intend to allow him to serve as head coach in the next year, whether or not he retired.  Defendant Tribue cancelled a summer basketball program Plaintiff had run for nine (9) years.  Plaintiff further alleges Defendant Tribue told other coaches and teachers that Plaintiff was retiring at the end of the 2003-2004 school year.  On August 26, 2004, Plaintiff filed this lawsuit, and in October 2004, Plaintiff learned from Defendant Tribue that he would not be hired as boys' head basketball coach for the 2004-2005 school year.  Although Plaintiff did not allege any specific facts related to the involvement of Dr. Keel, Dr. Cirrincoine, and Scott Brunette in the decision not to hire Plaintiff as head coach in 2004-2005, one can infer that they may have had some involvement in the decision because Brunette served as Athletic Director, Dr. Cirrincoine

7

served as Assistant Principal under Tribue, and Dr. Keel served as Assistant Superintendent for Human Resources. <u>See</u> <u>Scheid</u>, 859 F.2d at 436 (noting complaint may contain inferential allegations concerning material elements to sustain a recovery under some viable legal theory).

## V. CONCLUSION

Whether Plaintiff will ultimately succeed on the merits of his retaliation claim is not the present question. Because it does not appear beyond doubt that Plaintiff cannot prove any set of facts in support of his retaliation claim that would entitle him to relief, the Court will not dismiss the claim at this early stage of the litigation. <u>See</u> <u>Morgan</u>, 829 F.2d at 12. Accordingly, Defendants' Motion to Dismiss Retaliation Claim Under 42 U.S.C. § 1981 (Docket Entry No. 59) will be DENIED.

Remaining for adjudication are Plaintiff's claims against Defendant Metropolitan Government for race and age discrimination under Title VII, the Age Discrimination in Employment Act, and the Tennessee Human Rights Act, a claim under the Family and Medical Leave Act, the retaliation claim under § 1981, and a state-law breach of contract claim. The sole claim remaining for adjudication against the individual Defendants is the retaliation claim under § 1981.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE